UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: ) | |
| ) | |
| ) | |
| Christopher Blanchard Smith, Sr., ) | Case No. 10-41901-drd-7 |
| Hilda Mae Smith, ) | |
| ) | |
| Debtors. ) | |

**MEMORANDUM OPINION**

Before this Court is the Motion for Refund of Undistributed Funds Held by the Chapter 13 Trustee (the "Motion") filed by Christopher Blanchard Smith, Sr. and Hilda Mae Smith (the "Debtors"). In their Motion, the Debtors are requesting an Order that requires the Chapter 13 Trustee (the "Trustee") to return funds to the Debtors that were received after their Chapter 13 plan confirmation and prior to the conversion of the case to Chapter 7. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§1334(b) and 157(b)(2)(A). This is a core proceeding which this Court may hear and determine, and in which it may issue a final order. For the reasons set forth below, the Motion is denied.

I.    FACTUAL BACKGROUND

The facts are simple. The Debtors filed their Chapter 13 petition on April 20, 2010. In September of that year, this Court entered an Order (the "Confirmation Order") confirming their Chapter 13 plan as amended (the "Plan"). In December, 2013, it became clear to Mr. Smith that he would be forced to retire early due to health issues, and as a result, he could no longer afford to make his plan payments. The Debtors decided to convert their case to a Chapter 7 because of their substantial decrease in income. On January 15, 2014, this Court entered an Order granting the Debtors' motion to convert. The Trustee had $1,638.46 on hand at that time (the "Funds").

1

The Trustee intends to distribute the Funds to the unsecured creditors pursuant to the terms of the confirmed Plan. Hence, this Motion.

The issue is straightforward: Who gets the money? The Debtors claim that they need the Funds to pay for basic living expenses and unexpected costs that they could not otherwise afford. They make several several arguments in support of their request, including: 1) that Local Rule 3089-1 and the Confirmation Order conflict with the Bankruptcy Code; 2) that once the Chapter 13 case was converted to Chapter 7, the Confirmation Order was no longer in force so the Trustee has no authority for further disbursement to creditors; and 3) that the Funds are property of the estate that vested in the Debtors upon confirmation. The Trustee opposes the Motion on several grounds, including that the Local Rule and Confirmation Order direct the outcome, that Congress did not intend the requested result, and that there is ample case law to support a distribution to the creditors. The Court will examine that precedent and address the parties' respective arguments below.

II.  DISCUSSION

A.  <u>The Local Rule Dictates that the Funds be Disbursed to Creditors</u>

Local Rule 3089-1 is unambiguous: "If a plan payment is received by the trustee on or before the date of the order of dismissal or conversion in a confirmed plan, those funds will be disbursed to creditors pursuant to the terms of the confirmed plan." The Debtors challenge the validity of Local Rule 3089-1 by contending that it conflicts with Bankruptcy Code §§348(f)(1)(A) and 349(b)(3). Specifically, they argue that the Local Rule's creation of a right in creditors to receive payment after the dismissal of a Chapter 13 case is negated by §349(b)(3) which "takes that property away and revests it in the Debtors so that there is nothing left to distribute." They argue further that §348(f)(1)(A) "does the same thing by limiting the property

2

of the new chapter 7 estate to that property that existed at the time of the filing of the original petition."

To be valid, a local rule must pass a two-pronged test: 1) it must be consistent with the Bankruptcy Code in that it does not abridge, enlarge, or modify any substantive right, and 2) it must be a matter of procedure not inconsistent with the Bankruptcy Rules. *In re Canal Street Limited Partnership*, 269 B.R. 375, 382 (8th Cir. BAP 2001)(citations omitted). The Debtors do not cite any Bankruptcy Rules that conflict with Local Rule 3089-1. With respect to the Bankruptcy Code provisions cited by the Debtors, the Trustee correctly points out that neither of them addresses the issue before the Court and, therefore, Local Rule 3089-1 can hardly contravene them.

Section 348(f)(1)(A) provides that when a Chapter 13 case is converted, "property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion."[1] That section was amended as part of the Bankruptcy Reform Act of 1994 to resolve a split among the circuits on the issue of whether postpetition Chapter 13 income remained property of the estate upon conversion to Chapter 7. While §348(f) seems to indicate that a debtor's payments from post-petition earnings pursuant to a Chapter 13 plan are not generally part of the Chapter 7 estate upon conversion, it does not answer the question as to whether that money should be returned to the debtor or distributed per the terms of a confirmed plan. That point was made in *In re Hardin*, 200 B.R. 312 (Bankr. E.D. Ky. 1996). As in our case, *Hardin* involved a dispute between the debtors and the Chapter 13 trustee over the disposition of funds in the hands of the trustee upon conversion of the case to Chapter 7, *i.e.*,

---

[1] An exception is provided in §548(f)(2) which states that if a debtor converts the case in bad faith, "the property of the estate in the converted case shall consist of property of the estate as of the date of conversion." That provision is not applicable to the facts here.

whether those funds should be distributed pursuant to the terms of the confirmed plan or returned to the debtors.  The court began its analysis by noting that this dispute had nothing to do with the Chapter 7 trustee and the application of §348: "While Congress has clarified the disposition of such funds as between the chapter 7 estate and the debtor, it did not address the rights that creditors of the chapter 13 estate may have to these funds in the hands of the trustee when conversion of the case occurs post-confirmation."  *Id.* at 313.[2]  The court ultimately sided with the trustee, agreeing with a line of cases holding that confirmation vests rights in the creditors which require that post-petition wages paid to the Chapter 13 trustee be distributed to those creditors after conversion to Chapter 7.

Similarly, §349(b)(3) is not applicable.  It provides that a *dismissal* of a case "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case…" (emphasis added).  Section 349 is silent on the question of the distribution of assets when a case is converted as in the case here.

Because Local Rule 3089-1 does not abridge, enlarge, or modify any of the creditors' substantive rights, nor does it conflict with the Federal Bankruptcy Rules, the Court rejects the Debtors' challenge to its validity, and concludes that the Local Rule is valid and applicable.

B.    The Confirmation Order Dictates that Funds be Distributed Pursuant to the Plan

The last provision of the Confirmation Order states that "[f]unds paid into the trustee's office in a confirmed plan prior to the case being dismissed or converted shall be distributed pursuant to the confirmed plan and this confirmation order."  There is nothing ambiguous about the provision.  The Trustee's position that the Confirmation Order is binding is correct.  An order confirming a Chapter 13 plan is res judicata as to all issues decided or which could have been decided at the confirmation hearing.  *In re Fili*, 257 B.R. 370, 372 (1st Cir. BAP 2001).

---

[2] Here, the Chapter 7 Trustee is not claiming that the Funds are part of the Debtors' Chapter 7 estate.

As the court noted in the recent case of *In re Markham*, 2013 WL 6903753, *7 (Bankr. D. Mass. 2013), after concluding that favoring the rights of Chapter 13 creditors in accumulated funds was mandated by principles of judicial finality, "Having paid some of that money to the trustee for distribution to creditors, a debtor is judicially estopped from later asserting a right to recover the funds."

The Debtors did not challenge the Confirmation Order when they had the opportunity to do so. It has neither been revoked pursuant to §1330 nor modified. Thus, it is binding on the Debtors and their creditors.[3]

The Debtors assert that conversion to Chapter 7 acts to revoke the Confirmation Order and as a result, the Trustee is neither obligated nor authorized to disburse the Funds to the creditors. They cite *In re Doyle*, 11 B.R. 110, 110 (Bankr. E.D.Pa. 1981), as authority. The *Doyle* case is not relevant. There, the Chapter 13 plan provided that the debtors would either surrender the debtors' residence or make payments to the secured lender until the claim was paid in full. The lender moved for enforcement of the confirmation order, alleging that the debtors had remained on the premises without making any mortgage payments. The debtors argued that they were simultaneously converting their case to Chapter 7, so the premises became part of their estate and had to be abandoned by the trustee before the lender could take possession. The court agreed, concluding that the plan and confirmation order were no longer in effect, and the lender was limited to remedies available in a Chapter 7 case.

While both *Doyle* and the case at hand involve conversion from Chapter 13 to Chapter 7, the similarity ends there. The issue in *Doyle* was what remedy was available to a secured creditor if the debtors failed to comply with the terms of a confirmed plan, not how to disburse

---

[3] At the hearing on the Motion, the Debtors challenged the res judicata effect of the Confirmation Order, asserting that they had not had the opportunity to litigate its terms. That is simply not the case. The Debtors had the right and the opportunity to move to amend or vacate the Order, or file an appeal, yet they failed to do so.

5

accumulated funds. The Debtors' attempt to pluck one sentence out of a decision with distinguishable facts and declare that it mandates a result here is unpersuasive.

Conversion from Chapter 13 to Chapter 7 terminates the Chapter 13 estate, but it does not revoke what was lawfully ordered under the plan. *In re Waugh*, 82 B.R. 394, 398 (Bankr. Pa. 1988). No provision of the Code compels such a result. In the recent case of *In re Markham*, 2013 WL 6903753 (Bankr. D.Mass. 2013), the court rejected the idea that conversion has the effect of relieving the parties of their binding obligations under the plan and confirmation order:

> Nowhere in §348 nor in any other provision of the Bankruptcy Code is there a suggestion that conversion from chapter 13 to chapter 7 vacates a confirmed plan. Bankruptcy Code §1330 governing revocation of an order of plan confirmation does not include conversion as a triggering event or ground for revocation. Bankruptcy Code §349, which is the mirror image of §348 and is entitled 'Effect of Dismissal,' provides that dismissal 'vacates any order, judgment or transfer ordered under sections 522(i), 542, 550 or 553' of the Bankruptcy Code. This suggests that if Congress intended conversion to effect the vacating of any order it would have said so explicitly in §348.

*Id.* at *6.

In addition, a retroactive alteration of a confirmed plan and order would lead to ludicrous results and make Chapter 13 unworkable. For instance, a secured creditor who took surrendered collateral in satisfaction of its claim pursuant to the plan would be faced with the possibility of having to return the collateral to a Chapter 7 trustee if the case were later converted. *Id. See also In re Michael*, 699 F.3d 305, 320 (3d Cir. 2012)(Roth, J. dissenting)("Conversion does not retroactively alter this arrangement [between the debtor and the creditors] and undo the benefits the debtor received from the plan."). For these reasons, the Court concludes that the Confirmation Order is binding and mandates a distribution of the Funds to the creditors pursuant to the Plan terms.

6

C.  Section 1326(a)(2) Dictates that Funds be Distributed in Accordance with the Plan

Bankruptcy Code section 1326(a)(2) reads in part, "A payment made under this subsection shall be retained by the trustee until confirmation or denial of confirmation of a plan. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as practicable." The Debtor suggests that §1326(a)(2) refers only to funds received by the trustee before plan confirmation. The Court agrees with the Trustee's assessment that nothing in that section indicates that it is limited in that way, and an examination of the Chapter 13 statutory scheme underscores that. The court in *In re Lennon*, 65 B.R. 130 (Bankr. N.D. Ga. 1986), reached the same conclusion:

> While Section 1326(a)(2) does not specifically state that it applies to post-confirmation payments, we do have a congressionally stated intent that upon confirmation payments are to be disbursed pursuant to the plan. Logically, this was intended to include any payments made prior to or subsequent to confirmation. When the provision is considered together with the Section 1326(c) requirement that the trustee shall make payments to creditors and the previously noted exceptions of Sections 1306 and 1327, one can reasonably infer that Congress intended that post-confirmation payments made pursuant to the plan are likewise to be distributed to creditors provided for by the plan.

*Id.* at 137.

The Debtors also assert that "Section 1326(a)(2) does not vest rights in creditors that would require the chapter 13 trustee to disburse funds to them after conversion to chapter 7." That very issue was before the court in *Hardin* -- whether conversion to Chapter 7 abrogated the duty of the Chapter 13 trustee to distribute the money on hand in accordance with §1326. The court concluded that it did not: "[I]t does not appear that the changes effected by Public Law No. 103-394 indicate a congressional intent to address the question before the Court. There appears to be considerable precedent for the position of the trustee in the matter and, while this

7

precedent predates the 1994 Amendments to the Bankruptcy Code, does not appear to be negatively affected thereby." *Hardin*, 200 B.R. at 313(citing *In re Galloway*, 134 B.R. 602 (Bankr. W.D.Ky. 1991)(upon conversion post-confirmation, trustee shall distribute funds per plan terms); *In re Halpenny*, 125 B.R. 814 (Bankr. D.Haw. 1991)(confirmation gives creditors vested right to receive funds despite conversion); *In re Leonard*, 150 B.R. 709 (Bankr. W.D.Ark. 1992)(trustee must distribute funds on hand per plan terms despite conversion and Rule 1019(4)). *See also In re Waugh*, *supra*, at 400 ("The word 'shall' in section 1326(a)(2) creates the condition of a trust. Creditors have a right to the funds in an active confirmed chapter 13 plan upon payment by the debtor. … Payments received from debtors from post-petition property before the filing date of the motion to convert are subject to the confirmed chapter 13 plan."). As the court stated in *In re Radebaugh*, 125 B.R. 797 (Bankr. W.D.Mo. 1991),

> The statute requires the trustee to collect funds for the benefit of creditors and to distribute the money to the creditors only after the plan is confirmed. The payment of the money to the Chapter 13 Trustee once the plan is confirmed is equivalent to paying the money to the creditors.

*Id.* at 798.

This Court finds this line of cases persuasive and concludes that §1326(a)(2) requires the Trustee to distribute the Funds to the Debtors' creditors.

D.  <u>The Plan is a Contract and its Terms are Binding</u>

The Debtors rely on *In re Michael, supra*, to support their position that they are entitled to the Funds. Faced with the distribution dilemma this Court now faces, the majority in *Michael* concluded that the debtor retained a property interest in the undistributed funds even though they

were in the possession of the Chapter 13 trustee.[4] The majority based its holding, in part, on the legislative history of §348(f) and the broader policy of the Bankruptcy Code to encourage Chapter 13 reorganizations: "[I]f debtors must take the risk that property acquired during the course of an attempt at repayment will have to be liquidated for the benefit of creditors if chapter 13 proves unavailing, the incentive to give chapter 13…a try will be greatly diminished." *Id*. at 315 (referring to *In re Bobroff*, 766 F.2d 797, 803 (3d Cir. 1985)).

As indicated by the analysis elsewhere in this opinion, the Court prefers to predicate its holding on the statutory text rather than unclear legislative history of a statute which does not address the precise issue before the Court, and speculations about debtor motivations with regard to chapter choice. Frankly, as to the latter, the Court suspects that debtors simply do not contemplate the issue. The likelihood that some small sum of money held by the Chapter 13 trustee but not yet distributed would go to creditors rather than back to them in the event of a conversion, would not, in the real world, be a disincentive to filing Chapter 13 rather than Chapter 7.

In addition, as the dissent points out, the concerns expressed in *Bobroff* "are not present in Chapter 13 proceedings where a debtor derives a benefit from the confirmed bankruptcy plan." The dissenting Judge likened the situation to a contractual relationship: "Once a reorganization plan is confirmed, the relationship between the debtors and creditors change; the provisions of the plan bind the parties, generating benefits and corresponding responsibilities. … The debtor is entitled to continue 'receiving whatever benefits [he] believed were significant

---

[4] The Court notes that while the facts in *Michael* are similar to this case, at least one important distinction exists: there is no indication that *Michael's* plan confirmation order required that funds paid to the trustee per a confirmed plan prior to conversion be distributed pursuant to that plan.

9

enough for [him] to have … proceeded in Chapter 13, and the creditors receive the money paid into the Chapter 13 estate." *Michael,* 699 F.3d at 320 (citations omitted).[5]

Likewise, the *Markham* court adopted the contract approach, stating that "[c]onversion constitutes a breach by the debtor of his implicit obligation to maintain the chapter 13 case for the life of the plan." *Markham*, 2013 WL 6903753, at *6. Viewed in that context, the court reasoned that "awarding undisbursed funds plan funds to the non-breaching creditors becomes a compelling remedy." *Id.* This Court agrees.

E. <u>The Services of the Chapter 13 Trustee Do Not End at Conversion</u>

The Debtors argue that once the Plan is no longer in effect, the Trustee has no authority to make further disbursements to creditors. This argument makes no sense. Although the service of the Chapter 13 trustee is terminated by Section 348(e), it is clear that Congress intended that the Chapter 13 trustee wind up the affairs of the estate, including disbursing monies on hand to the appropriate recipient. *In re Pegues*, 266 B.R. 328, 336-37 (Bankr. D. Md. 2001). Bankruptcy Rule 1019 supports this conclusion; it requires the Chapter 13 trustee to file a final report and account not later than 30 days after conversion to Chapter 7. In order to comply with that Rule, the trustee must necessarily file objections to claims, complete the distribution of funds and conduct whatever duties are called for in order to file the final report and accounting. *Id*., at 337. *See also In re Redick,* 81 B.R. 881, 886 (Bankr. E.D. Mich. 1987)(if it were true that the Chapter 13 trustee ceases to be one when the case converts, then "he would certainly be under no duty to render a final account as Chapter 13 trustee" as required by Rule 1019); *In re Michael, supra,* at p. 320 (citations omitted) ("Since Congress intended for the trustee to perform

---

[5] Judge Roth noted that the benefits a debtor receives may include saving a residence from foreclosure, curing a mortgage delinquency over time with more affordable payments, maintaining possession over an automobile or other personal property, or having the automatic bankruptcy stay remain in place for an extended period of time. *Id.* at 320, n. 7.

10

several ancillary duties to clean-up and finalize the administration of the estate, there is no reason why distribution of funds pursuant to the previously confirmed reorganization plan cannot be included as one of those administrative duties.").

There is nothing in the Bankruptcy Code or Bankruptcy Rules that excludes making final distributions to creditors from a Chapter 13 trustee's final duties. The Court rejects the Debtors' argument to the contrary.

F.  Undistributed Funds Do Not Vest in the Debtors

Finally, the Debtors attempt to justify their request by citing §1306, arguing that the Funds are property of the estate which vested in the Debtors at the time of confirmation under §1327(b), and that under §1327(c), such property is free and clear of the claims and interests of any creditor provided for by the Plan. That argument, however, has been rejected numerous times as noted below. It should not apply to funds actually paid over to the Chapter 13 trustee. More importantly, §1327 is subject to the condition that the order of confirmation not provide otherwise.

Section 1306(a)(2) states that property of the estate includes "earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted…." Section §1306(b) provides further that, "[e]xcept as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate."

Section 1327 addresses the effect of confirmation:

> (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
> (c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under

11

Case 10-41901-drd7 Doc 101 Filed 05/08/14 Entered 05/08/14 11:12:35 Desc Main
Document Page 12 of 14

>subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

The intersection of these Code provisions and others was presented in *Lennon*, *supra*. Although no plan was confirmed in that case, the court examined the various provisions to ascertain Congressional intent with respect to payments from the debtor's future earnings that are specifically earmarked for distribution to creditors under a confirmed plan --

> Sections 1306(b) and 1327(b) specifically except such payments from their provisions since the debtor's right of possession and vesting of title is limited to all sums and property not otherwise provided for in the confirmed plan or confirmation order. These exceptions to possession and vesting of title in debtor indicate that debtor is to have no continuing interest in payments actually made pursuant to a confirmed plan. It is logical to infer that Congress intended that any payments actually made to the trustee pursuant to a confirmed plan would be placed in the trustee's possession and vested in the creditors provided for by such plan. The creditors' right to payment matures at the time each payment is made to the trustee pursuant to the confirmed plan. Therefore, undistributed payments which are made pursuant to a confirmed plan and thus set aside for creditors must be paid to such creditors in accordance with the provisions of the plan whether the case proceeds as a Chapter 13, converts to Chapter 7, or is dismissed.

*Lennon*, 65 B.R. at 136. Several other courts and jurisdictions have also come to the conclusion that the creditor's interest in Chapter 13 plan payments vest when each payment is made and, upon conversion of the case to Chapter 7, any undistributed payments do not become property of the converted Chapter 7 estate but must be disbursed according to the terms of the confirmed plan. *In re Galloway*, 134 B.R. 602, 603 (Bankr. W.D.Ky. 1991). *See, e.g., Hardin, supra*, at 314 (confirmation vests rights in the creditors even after conversion); *In re Redick*, *supra*, at 887 (once debtor has voluntarily delivered payments to the custody of the Chapter 13 trustee under a confirmed plan, the creditors have a vested right to receive those payments); *In re Ledford*, 90 B.R. 301, 304-05 (Bankr. S.D.Ohio 1988)("when debtors have voluntarily paid funds to the

Chapter 13 Trustee pursuant to the terms of a confirmed Plan, the creditors' right to receive funds pursuant to the confirmed plan vests *at the time the trustee receives the funds* and debtors can no longer retain any reasonable expectation that such funds will be returned to them under any circumstances, including a conversion")(emphasis in original); *In re Halpenny*, 125 B.R. 814, 816 (Bankr. D. Haw. 1991)(creditors have a vested right to receive funds at the time the trustee receives them, and because of this vesting, the debtor no longer has any interest in the funds); *Pegues, supra*, at 336 (once a debtor made a plan payment pursuant to a confirmed plan, the debtor relinquished all rights in that payment). This Court finds this line of cases persuasive. Even if this were not the result absent a relevant provision in the Confirmation Order, it clearly is if the Order so provides. Here, it does, stating specifically that such payments are to be turned over to creditors.

### III.  CONCLUSION

In this case, both the Local Rules and the Confirmation Order dictate that the Funds must be distributed to the creditors pursuant to the confirmed Plan. Local Rule 3089-1 meets the test for validity in that it does not contravene any Bankruptcy Code provisions or Bankruptcy Rules. The Confirmation Order is binding on all parties since it has not been amended or revoked. Section 1326(a)(2) expressly directs the Trustee to make the distribution to the creditors pursuant to the Plan terms and there is ample support for the position that Congress intended this provision to apply to post-confirmation payments. When the Plan is viewed as a contract, such a distribution is the creditors' remedy for the Debtors' breach of their obligations under that Plan and the price they pay for having enjoyed the benefits of Chapter 13. The Trustee is required to wind up the affairs of the estate prior to conversion, and there is no reason that making a final distribution to creditors should not be authorized as part of that process. Lastly, once the Debtors

13

made payments to the Trustee, they relinquished their rights in that money and the interest vested in the creditors.  For all of these reasons, the Court denies the Motion, and orders the Trustee to disburse the Funds to the creditors pursuant to the terms of the Plan.

    Date:  May 8, 2014                      */s/Dennis R. Dow*
                                            THE HONORABLE DENNIS R. DOW
                                            UNITED STATES BANKRUPTCY JUDGE